**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X   Case No.
SHETAYIA BLACKWOOD

**COMPLAINT**

              Plaintiff,    **PLAINTIFF DEMANDS A TRIAL BY JURY**

- against -

WHITE PLAINS HOSPITAL MEDICAL CENTER, *as well as* FITZCAR BATARD, DANIELLE DELGADO, and JOHN SANCHEZ, *Individually*,

              Defendants.
-------------------------------------------------------------------X

Plaintiff, SHETAYIA BLACKWOOD ("Plaintiff," "BLACKWOOD") by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants WHITE PLAINS HOSPITAL MEDICAL CENTER ("WPHMC"), as well as FITZCAR BATARD ("BATARD"), JOHN SANCHEZ ("SANCHEZ"), and DANIELLE DELGADO ("DELGADO") individually, upon personal knowledge, as well as information and belief, by alleging and averring as follows:

**NATURE OF THE CASE**

1. This is the case of a young female employee, who while working as an Environmental Service Aid at Defendant WPHMC, suffered systemic sexual harassment by her supervisor, Defendant BATARD, before ultimately being fired in a blatant act of discrimination and retaliation on the basis of her gender (female, sexual harassment). To add insult to injury, just shortly after she was terminated by Defendant BATARD, Plaintiff BLACKWOOD complained about the sexual harassment she had suffered to Defendants SANCHEZ and DELGADO, who, in turn, undertook an investigation that

2.  resulted in the termination of Defendant BATARD but not the reinstatement of Plaintiff BLACKWOOD. Furthermore, Plaintiff BLACKWOOD was never informed of the outcome of the investigation by Defendant WPHMC.

2.  Plaintiff BLACKWOOD brings this action alleging that Defendants have violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII"), and the New York State Human Rights Law, the New York State Executive Law, §§ 296, *et seq.* ("NYSHRL").

3.  Plaintiff seeks damages, as well as injunctive and declaratory relief, to redress the injuries she has suffered – physical, emotional and pecuniary – as a result of being discriminated and retaliated against by her employer on the basis of her female gender and sexual harassment.

## JURISDICTION, VENUE AND PROCEDURAL PREREQUISITES

4.  Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

5.  The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. § 1367.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York or the acts complained of occurred therein.

7.  By Plaintiff (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 19, 2019; (b) receiving a Notice of Right to Sue from the EEOC on March 2, 2020; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, Plaintiff has satisfied

all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## THE PARTIES

8. At all times relevant hereto, Plaintiff BLACKWOOD has been a resident of the State of New York and County of Bronx.

9. At all times relevant hereto, Defendant WPHMC, was and is a domestic for-profit medical center duly existing pursuant to, and by virtue of, the laws of the State of New York. Defendant WPHMC maintains a principal place of business located at 41 East Post Road, White Plains, New York, 10601.

10. At all times relevant hereto, Defendant BATARD was an employee of Defendant WPHMC, working as the Director of Environmental Aid, and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiff BLACKWOOD's employment or to otherwise influence the decision making regarding same.

11. At all times relevant hereto, Defendant SANCHEZ was an employee of Defendant WPHMC, working as the Director of Human Resources in the Human Resources Department, and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiff BLACKWOOD's employment or to otherwise influence the decision making regarding same.

12. At all times relevant hereto, Defendant DELGADO was an employee of Defendant WPHMC, working as a Senior HR Business Consultant in the Human Resources Department, and, as such, had the authority to hire, terminate, and affect the terms and conditions of Plaintiff BLACKWOOD's employment or to otherwise influence the decision making regarding same.

13. Defendant WPHMC, and Defendant BATARD are sometimes collectively referred to herein as "Defendants."

## MATERIAL FACTS

14. Plaintiff BLACKWOOD commenced her employment with Defendant WPHMC as an Environmental Service Aid on February 18, 2019, when she started her 60-day probationary period. Plaintiff BLACKWOOD earned a salary of $17.50 per hour, working between 37.5 to 40 hours per week.

15. On that same day, Plaintiff BLACKWOOD was introduced to Defendant BATARD, who also worked for Defendant WPHMC as a Director of Environmental Services.

16. Defendant BATARD engaged in unremitting, severe and pervasive sexual harassment against her throughout Plaintiff BLACKWOOD's employment term which generated a hostile work environment. Defendant BATARD's intentional actions rendered Plaintiff BLACKWOOD virtually unable to do her job effectively because she was continually uncomfortable and offended by his sexually-suggestive communications with her.

17. Shortly after Plaintiff BLACKWOOD commenced her employment with Defendant WPHMC, Defendant BATARD began to communicate with Plaintiff BLACKWOOD over text messages. Defendant BATARD's text messages and behavior towards her quickly progressed from being informative and professional to hostile, intimidating, sexualized, and harassing.

18. By way of example, on March 12, 2019, while both were in an elevator, Defendant BATARD deliberately brushed his body up against Plaintiff BLACKWOOD. When Plaintiff BLACKWOOD respectfully and sternly told Defendant BATARD not to touch her, Defendant BATARD joked in a text message: "what body part of mine touched

yours?" Uncomfortable, mortified, and violated, Plaintiff BLACKWOOD affirmatively rejected Defendant BATARD's text message taunts.

19. Later that same day, Defendant BATARD asked Plaintiff BLACKWOOD in an invasive text message: "What time are you going to bed?"

20. On the morning of March 13, 2019, Defendant BATARD sent a text message to Plaintiff BLACKWOOD, which read: "Good morning (sunshine emoji symbol), do you need to see me?" This message followed an image of Defendant BATARD taking a photo of himself in Defendant WPHMC's bathroom wearing a purple tie and shirt.

21. That same day, after Plaintiff BLACKWOOD did not respond to the messages and image, Defendant BATARD's tone became hostile and intimidating, when he stated: "Thank you…Thank you for making me waste my purple on you today."

22. Plaintiff BLACKWOOD, mortified, uncomfortable, and embarrassed, nevertheless discouraged Defendant BATARD's behavior by affirmatively rejecting his advances. Defendant BATARD then wrote to Plaintiff BLACKWOOD in a threatening fashion: "That's not how this works."

23. Defendant BATARD persisted: "you share your thoughts after being asked politely to do so… and I believe I was purple polite today… don't you think?" Plaintiff BLACKWOOD felt trapped, and still affirmatively responded to Defendant BATARD: "No"! Defendant BATARD's conduct in this regard constituted textbook *quid pro quo* sexual harassment.

24. Dissatisfied in Plaintiff BLACKWOOD's rejection of his ongoing harassment and sexualized behavior towards her, Defendant BATARD's subsequent message to Plaintiff BLACKWOOD was hostile, aggressive, manipulative and categorically inappropriate.

25. Defendant BATARD persisted with his unwanted advances, when he commented on her hair style and glasses, inferring that her work ensemble had sexualized connotation. Defendant BATARD sent a follow-up text message to Plaintiff BLACKWOOD, when she rejected his offensive remark: "Cmon you're a smart girl.. you get one more chance to figure it out." This message was followed by a wide-eyed emoji symbol with its tongue sticking outward.

26. Defendant BATARD followed these messages with an image of himself and the statement: "You work in my department… I am your boss… at any time you can be summoned." Intimidated, horrified, and at a loss for words, Plaintiff BLACKWOOD affirmatively rejected Defendant BATARD's threats. Defendant BATARD's conduct in this regard constituted textbook *quid pro quo* sexual harassment.

27. Defendant BATARD pushed further and pressured Plaintiff BLACKWOOD not to leave her shift without engaging with him while on her shift: "…Not if I tell my guys to keep you around for a second." Defendant BATARD then instructed Plaintiff BLACKWOOD how to view the photo of himself that he sent to her: "Lol for your viewing pleasures… zoom in on certain areas." Plaintiff BLACKWOOD informed Defendant BATARD that she did not zoom in on his picture.

28. Defendant BATARD continued to assert his power by making threats to ensure that he found Plaintiff BLACKWOOD on her shift: "Well you come a lot earlier than I do, but then I will get a report of who is where and is doing what… then it's just a matter of rounding on you lol (winking emoji symbol)… annnnd gotcha"

29. Defendant BATARD, unwilling to accept Plaintiff BLACKWOOD's rejection of further communication, responded with three consecutive text messages: "Aww my bad

darling… turn that frown upside down, tomorrow I want nothing but smiles when you see me… Deal..?" Defeated, Plaintiff BLACKWOOD responded with: "You're the boss, I have no say."

30. On March 15, 2019, Defendant BATARD touched Plaintiff BLACKWOOD for a second time while on her shift at Defendant WPHMC. When Plaintiff BLACKWOOD asked Defendant BATARD why he wouldn't show respect and refrain from touching her, Defendant BATARD mockingly laughed in a text message at her humiliation.

31. The text messages from Defendant BATARD to Plaintiff BLACKWOOD continued to grow more patently offensive and harassing. On or around March 21, 2019, Defendant BATARD sent a .gif image of a phallic-looking toe that stretched from the edge of a pool into the water.

32. That same day, Defendant BATARD sent a text message to Plaintiff BLACKWOOD which read: "I am your boss after all," followed by another .gif image of a dark-skinned man smiling and in the shower, presumably to draw inference that Defendant BATARD was either in that moment naked and in the shower, or that she consider his physical characteristics without any clothes on.

33. After Plaintiff BLACKWOOD refused to engage in further texting communication, Defendant BATARD's ongoing badgering and harassment continued and escalated to Defendant BATARD asking to "come over," and then, "can I call you?" Defendant BATARD's messages to Plaintiff BLACKWOOD persisted, even while she had automatic notification that she was driving and would not respond.

34. Although she feared retaliation by Defendant BATARD for ending the inappropriate chains of communications, in mid-April of 2019, subsequently blocked Defendant

BATARD from her cell phone number. Plaintiff BLACKWOOD's fear of retaliation was realized when she was terminated only days later, on May 7, 2019.

35. On May 7, 2019, Plaintiff BLACKWOOD received her probationary evaluation with Defendant BATARD. During that evaluation, Plaintiff BLACKWOOD's employment was immediately terminated.

36. On May 14, 2019, Plaintiff BLACKWOOD made a formal complaint to the Human Resources Department of Defendant WPHMC. The Human Resources Director and HR Business Consultant, known as Defendants SANCHEZ and DELGADO, respectively, promised to investigate Plaintiff BLACKWOOD's allegations. At that time, Plaintiff BLACKWOOD submitted all of the text messages between her and Defendant BATARD.

37. On June 3, 2019, Plaintiff BLACKWOOD engaged in a conference call with Defendant DELGADO and Defendant SANCHEZ. When Plaintiff BLACKWOOD asked for an update on the investigation into her allegations, Defendants SANCHEZ and DELGADO informed her that Defendant BATARD "was let go."

38. Given that Defendant BATARD was terminated because of his egregious actions towards her, Plaintiff BLACKWOOD then asked for reinstatement of her job at Defendant WPHMC. Defendants DELGADO and SANCHEZ still declined to reinstate her position, nor did they offer any further meaningful assistance.

39. Plaintiff BLACKWOOD has been unlawfully discriminated against, harassed, humiliated, and degraded, and as a result, suffered loss of rights, emotional distress, loss of income and earnings.

40. Plaintiff BLACKWOOD was subjected to a discriminatory, hostile and abusive work

environment – based, *inter alia*, on the *quid pro quo* sexual harassment of her supervisor -- that no one person in her position should or could reasonably be expected to endure. Accordingly, Defendant BATARD's conducted is legally imputable to Defendant WPHMC.

41. Defendant BATARD terminated Plaintiff BLACKWOOD in retaliation for her repeatedly rebuffing his sexual advances. Accordingly, Defendant BATARD's conducted is legally imputable to Defendant WPHMC.

42. Plaintiff BLACKWOOD's complaint of sexual harassment was effectively ignored by Defendants DELGADO and SANCHEZ when they upheld her termination by Defendant BATARD. Thus, the failure to take prompt remedial action by Defendants DELGADO and SANCHEZ is legally imputable to Defendant WPHMC.

43. Defendants created a hostile working environment, which unreasonably interfered with Plaintiff BLACKWOOD's work environment.

44. Defendants' actions and conduct were intentional for the purpose of harming Plaintiff.

45. As a result of Defendants' actions, Plaintiff BLACKWOOD feels extremely degraded, victimized, embarrassed, and emotionally distressed.

46. As a result of the acts and conduct complained of herein, Plaintiff BLACKWOOD has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff BLACKWOOD has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff BLACKWOOD further experienced severe emotional and physical distress.

47. Because Defendants' conduct has been malicious, willful, outrageous, and done with full

knowledge of the legion of laws to the contrary, Plaintiff BLACKWOOD demands punitive damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION AND RETALIATION
### UNDER TITLE VII
### (Not Against Individual Defendants)

48. Plaintiff BLACKWOOD repeats and realleges each and every allegation made in the above paragraphs of the complaint as if fully set forth herein.

49. The claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendant WPHMC. Plaintiff BLACKWOOD complains that Defendant WPHMC violated Title VII's prohibition against discrimination or retaliation in employment based, in whole or in part, upon an employee's sex.

50. 42 U.S.C. §§ 2000e-2 states:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, <u>sex</u>, or national origin…

51. Defendant WPHMC engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e by discriminating against Plaintiff BLACKWOOD because of her sex (female, sexual harassment).

52. 42 U.S.C. §§ 2000e-3 states:

> It shall be an unlawful employment practice for an employer to discriminate against any of her employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any

member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by the subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the subchapter.

53. Defendant WPHMC engaged in unlawful employment practices prohibited by 42 U.S.C. §§ 2000e-3 by retaliating against Plaintiff BLACKWOOD for complaining of the aforementioned violations, and for not reinstating her employment.

54. As a result of the acts and conduct complained of herein, Plaintiff BLACKWOOD has suffered, and will continue to suffer, damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that her employment entailed; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

55. Accordingly, as a result of the unlawful conduct of Defendant WPHMC, Plaintiff BLACKWOOD has been damaged as set forth herein and is entitled to the maximum compensation available to her under the law.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION AND RETALIATION UNDER THE NEW YORK STATE LAW (Against All Defendants)

56. Plaintiff BLACKWOOD repeats and realleges each and every allegation made in the above paragraphs of the complaint as if fully set forth herein.

57. Executive Law § 296 provides that:

> 1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to

11

> hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

58. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff on the basis of her sex (female, sexual harassment).

59. New York State Executive Law § 296(7) provides that it shall be an unlawful employment practice:

> For any person engaged in any activity to which the section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under the article.

60. Defendants violated the provision by retaliating against Plaintiff BLACKWOOD and creating a hostile work environment due to her complaints that ultimately resulted in her termination, and denial for reinstatement.

61. As a result of the acts and conduct complained of herein, Plaintiff BLACKWOOD suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that they were denied due to discrimination; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

62. Accordingly, as a result of Defendants' unlawful conduct, Plaintiff BLACKWOOD has been damaged as set forth herein and is entitled to the maximum compensation available under the law.

## AS A THIRD CAUSE OF ACTION
## AIDING AND ABETTING
## UNDER NEW YORK STATE LAW
## (Against Individual Defendants Only)

63. Plaintiff BLACKWOOD repeats and realleges each and every allegation made in the above paragraphs of the complaint as if fully set forth herein.

64. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under the article, or attempt to do so."

65. Defendants BATARD, SANCHEZ and DELGADO engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct against Plaintiff BLACKWOOD.

66. As a result of the acts and conduct complained of herein, Plaintiff suffered and will continue to suffer damages including but not limited to economic and pecuniary losses (past and future) – such as income, salary, benefits, bonuses, commission and other compensation that they were denied due to discrimination; severe emotional, psychological and physical stress, distress, anxiety, pain and suffering; the inability to enjoy life's pleasures; and other non-pecuniary losses and special damages.

67. Accordingly, as a result of the unlawful conduct by Defendants BATARD, SANCHEZ and DELGADO, Plaintiff BLACKWOOD has been damaged as set forth herein and is entitled to the maximum compensation available under the law.

## JURY DEMAND

68.   Plaintiff BLACKWOOD each requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff BLACKWOOD respectfully requests a judgment against the Defendants:

A.   Declaring that Defendants engaged in, and enjoining Defendants from continuing to engage in, unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, *et seq*. (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII");  New York State law, and New York State Common Law in that Defendants discriminated and retaliated against Plaintiff BLACKWOOD on the basis of her sex (female, sexual harassment) ;

B.   Awarding damages to Plaintiff BLACKWOOD for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make Plaintiff BLACKWOOD whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff BLACKWOOD compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven at trial;

D.   Awarding Plaintiff BLACKWOOD punitive damages;

E.   Awarding Plaintiff BLACKWOOD attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.      Awarding Plaintiff BLACKWOOD such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices against each of them.

Dated: New York, New York
May 6, 2020

                                            **PHILLIPS & ASSOCIATES,**
                                            **ATTORNEYS AT LAW, PLLC**

By:     /s/
         Shawn R. Clark
         *Attorneys for Plaintiff*
         45 Broadway, Suite 620
         New York, New York 10006
         (212) 248-7431
         Sclark@tpglaws.com